IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| STEVEN F. HOTZE, M.D. and AUBREY TAYLOR, | ) | |
| | ) | |
| *Plaintiffs*, | ) | Civil Action |
| | ) | |
| v. | ) | |
| | ) | No. |
| | ) | |
| KIM OGG, VIVIAN KING, GERALD WOMACK, | ) | **JURY TRIAL** |
| and HARRIS COUNTY, TEXAS, a government | ) | **DEMANDED** |
| municipality in Texas, | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

## COMPLAINT

Plaintiffs, Steven F. Hotze, M.D. ("Dr. Hotze") and Aubrey Taylor ("Mr. Taylor") (collectively the "Plaintiffs"), by and through undersigned counsel, respectfully submit their Complaint as follows:

## NATURE OF THE ACTION

1.      Defendants Kim Ogg and Vivian King have perpetrated an unprecedented retaliation against political opponents, including Plaintiffs, for their exercise of their First Amendment rights under the U.S. Constitution.  For several years Defendants Ogg and King, working together, and in some cases with private attorneys, perpetrated frivolous criminal and civil lawsuits against Plaintiffs, which have cost Plaintiffs enormous amounts of time and money to defend.  These lawsuits were in retaliation for Plaintiffs' First

Amendment-protected speech, as well as their support of election integrity, conservative candidates, and public opposition to voter fraud.

2.      In deprivation of Dr. Hotze's Fifth Amendment rights under the U.S. Constitution, Defendant Ogg and various attorneys within the Harris County, Texas District Attorney's Office, concocted a scheme to conspire and collaborate with a private legal team to initiate a civil lawsuit.  Defendant Ogg did not inform Dr. Hotze of their involvement, and the private legal team would funnel the civil discovery to Defendant Ogg and the DA's Office.  Defendant Ogg and the DA's Office then used the civil discovery to initiate a criminal proceeding, while concealing the scheme from Dr. Hotze.  Defendant Ogg's concealment of their scheme would deceive Dr. Hotze to forgo his constitutional right to remain silent for the criminal case.  And this is indeed what has occurred.

3.      Defendant Gerald Womack ambushed and violently attacked Mr. Taylor. Defendant Womack also conspired with those who, at that time, sat high above the justice structure in Harris County, Texas.  Political favors were allegedly exchanged with a former United States Congresswoman to remove and silence a common political adversary of Defendants Ogg, King and Womack.  As the owner of a newspaper, Mr. Taylor was simply exercising his First Amendment rights to speech, when he opposed King in her election, criticized Gerald Womack and Sheila Jackson Lee, and printed articles and attached evidence which purports to show how Defendants Ogg, King and Womack benefitted from illegal ballot harvesting.  Yet, instead of working through lawful channels, Defendants Ogg and King used their political positions to investigate and jail Mr. Taylor.  In deprivation of Mr. Taylor's constitutional rights, Defendants retaliated, harassed, conspired and injured Mr. Taylor in an unprecedented manner.

## JURISDICTION

4.     This action arises under 42 U.S.C. §§ 1983 & 1988 in relation to Defendants' deprivation of Plaintiffs' constitutional rights pursuant to the First, Fifth, and Fourteenth Amendments to the U.S. Constitution.  Accordingly, this Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) & (4).  This Court further has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the related state claims as they are so related to the original jurisdiction claims in this action that they form part of the same case or controversy under Article III of the United States Constitution.

5.     This Court has personal jurisdiction over the Defendants, because each Defendant is domiciled in Harris County, Texas, has sufficient contact with Harris County, Texas, and otherwise has intentionally availed himself, herself, or itself of significant benefits provided by Harris County, Texas, rendering the exercise of Jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

## VENUE

6.     Venue is proper in this United States District Court for the Southern District of Texas under 28 U.S.C. § 1391(b)(1) and (b)(2) because at least one of the Defendants resides in this district and a substantial part of the events were committed in this district.

## THE PARTIES

7.     Plaintiff, Dr. Hotze, is a resident of Harris County, Texas, and a citizen of the United States.

8.     Plaintiff, Aubrey Taylor, is a resident of Harris County, Texas, and a citizen of the United States.

9.    Defendant Kim Ogg ("Defendant Ogg") is a resident of Harris County, Texas.  Defendant Ogg was not reelected as the District Attorney of Harris County, Texas, and her term officially ended on December 31, 2024.

10.    Defendant Vivian King ("Defendant King") is a resident of Harris County, Texas.  Defendant King was Chief of Staff under Defendant Ogg in the Harris County District Attorney's Office; however, she was recently terminated by Harris County District Attorney Sean Teare ("DA Teare").

11.    Defendant Gerald Womack ("Defendant Womack") is a resident of Harris County, Texas, and a citizen of the United States.

12.    Defendant Harris County, Texas, is a body corporate and the governing body of Harris County, Texas ("Harris County").

<u>**GENERAL ALLEGATIONS**</u>

13.    Harris County District Attorney Sean Teare fully reviewed the conduct of Defendant Ogg in filing and pursuing criminal charges against Plaintiffs Dr. Hotze and Mr. Taylor.

14.    On May 20, 2025, DA Teare made this public statement: "As we review more cases filed under the previous administration, a pattern has become quite clear: The former district attorney abused the authority of this office to overcharge and investigate those she disagreed with and outsourced high-profile criminal investigations to friends who shared her political views."  DA Teare reminded the people of Harris County that "that's not justice."

**Dr. Steven Hotze**

15.     Since the 1990's, Dr. Hotze as a high-profile Republican and Defendant Ogg as a high-profile Democrat have publicly opposed each other on numerous issues ranging from politics to crime to religion.

16.     Dr. Hotze has been outspoken against election fraud since prior to the 2020 election and has been involved in an organization devoted to exposing election fraud in Harris County.  In the exercise of his First Amendment rights, Dr. Hotze has also raised money and campaigned against Democrats in Harris County elections, particularly those who he believed had failed to do enough to safeguard election integrity and conservative values.

17.     Dr. Hotze has opposed Defendant Ogg in each of her elections.  Defendant Ogg has been an outspoken critic of Dr. Hotze for many years.

18.     Working through a 501(c)(3) organization, Liberty Center for God & Country ("Liberty Center"), Dr. Hotze exposed individuals who had participated in ballot harvesting and other illegal voting activities.

19.     Some of the individual(s) were compensated by Defendant Ogg's campaign.

20.     From January 1, 2017 until December 31, 2024, Defendant Ogg was the District Attorney of Harris County, Texas.

21.     The information related to election fraud was provided to Defendant Ogg. However, Defendant Ogg did not act on the evidence of election fraud provided to her by Liberty Center.  Instead, and in retaliation, Defendant Ogg targeted Dr. Hotze for exposing election fraud, resulting in multiple indictments and arrests.

22.     It is well known that Defendant Ogg has been accused of abusing the power of her office to pursue personal vendettas against her political opponents.[1]

23.     On October 19, 2020, former Houston Police Department (HPD) Captain Mark Aguirre ("Mr. Aguirre"), was involved in a fender-bender automobile accident with David Lopez ("Mr. Lopez").  Dr. Hotze was not involved in this accident.

24.     After the accident occurred, Mr. Lopez was upset and charged at Mr. Aguirre.  Mr. Aguirre, not Mr. Lopez, flagged down an HPD officer who was driving by and reported the incident to the officer.  After investigating the automobile accident, the officer issued Mr. Aguirre a traffic ticket for failing to control his speed.  Neither party was arrested at the time.

25.     At the time of the incident, Mr. Aguirre was working as an independent contractor for Liberty Center.  Mr. Aguirre was investigating allegations of vote fraud.  Dr. Hotze was an officer of Liberty Center, and did not direct nor control the accident, or own any of the automobiles involved in the accident.

26.     As part of the ballot harvesting investigation, Dr. Hotze uncovered that one of the ballot harvesters was paid as a consultant by Defendant Ogg.

27.     On or about November 11, 2020, Mr. Aguirre appeared before Houston Municipal Court Judge Kimberly Gamble and entered a plea of "no contest."  Mr. Aguirre was found guilty and sentenced to pay a fine of $174.90 and court costs totaling $308.90.

---

[1] *See, e.g.*, Jen Rice, *et al.*, "'Don't cross her': How DA Kim Ogg has repeatedly aimed her power at Harris County officials," *Houston Chronicle* (Sept. 23, 2023) https://www.houstonchronicle.com/news/investigations/article/kim-ogg-harris-county-power-18334282.php (viewed Aug. 28, 2025).

28.     On March 30, 2021, Mr. Lopez sued Dr. Hotze, <u>not Mr. Aguirre</u>, for personal injury alleging, among other things, false imprisonment, assault, civil conspiracy, civil theft, aiding and abetting, and intentional infliction of emotional distress based on the alleged torts of Mr. Aguirre, an independent contractor ("Civil Suit").

29.     At the time the Civil Suit was filed, Mr. Aguirre was not included as a party to the Civil Suit and Mr. Aguirre and Dr. Hotze had not been indicted by the Harris County DA's Office ("DA's Office").  Indeed, Dr. Hotze, not Mr. Aguirre who was the individual involved in the automobile accident, was sued in civil court by Mr. Lopez for personal injury.

30.     Notably, Mr. Lopez is represented by K. Scott Brazil ("Mr. Brazil") in the Civil Suit.  Mr. Brazil and his partner also represent the Texas Democratic Party. Defendant Ogg, the DA's Office and the Civil Suit private attorneys acted in concert and conspired against Dr. Hotze.

31.     In May of 2021, after Mr. Lopez filed the Civil Suit against Dr. Hotze, and before Mr. Aguirre or Dr. Hotze were indicted, Mr. Brazil began engaging in civil discovery, specifically requesting information which prosecutors would not be entitled to in a criminal proceeding without a court order including, but not limited to, the deposition of Dr. Hotze, request for production of documents, interrogatories, request for admissions, and information related to Dr. Hotze's net worth.

32.     Dr. Hotze never received a target letter[2] identifying him as the subject of an investigation by the DA's Office.

---

[2] A target letter informs a person that he/she is the "target" of a criminal probe.  The letter alerts them that an indictment may be forthcoming and gives the target a chance to obtain legal representation to prepare for what lies ahead.

33.     On December 14, 2021, more than a year after the automobile accident between Mr. Aguirre and Mr. Lopez, and nine months after Dr. Hotze had been sued in the Civil Suit for the automobile accident involving Mr. Aguirre and Mr. Lopez, Mr. Aguirre, not Dr. Hotze, was indicted for Unlawful Restraint and Aggravated Assault with a Deadly Weapon.  At the time, the Civil Suit was proceeding, and extensive discovery had been conducted.

34.     During this period, *i.e.*, after the Civil Suit was initiated and before Dr. Hotze was indicted, Mr. Brazil and Dicky Grigg (Mr. Grigg has also represented the Texas Democratic Party), the Civil Suit private attorneys, were coordinating and/or sharing information with the DA's Office, including the deposition testimony of Dr. Hotze, pleadings, discovery, and engaging in phone calls related to the strategy of the Civil Suit.

35.     On April 20, 2022, over a year after the Civil Suit had been filed and significant discovery in the Civil Suit had occurred, a grand jury indicted Dr. Hotze for Unlawful Restraint and Aggravated Assault with a Deadly Weapon ("First Indictment"). The allegations in the Civil Suit mirror those in the First Indictment, without any evidence that Dr. Hotze directed, controlled, or was present at the minor traffic accident.

36.     On May 23, 2022, Mr. Aguirre was added as a party to the Civil Suit, more than a year and a half after Mr. Aguirre had been indicted and a month after the First Indictment.

37.     During this time, the DA's Office, under the control of Defendant Ogg, was secretly coordinating with the Civil Suit private attorneys and using the private attorneys as its agent to circumvent Dr. Hotze's Fifth and Fourteenth Amendment rights using civil discovery in the criminal case against Dr. Hotze.

38.    Unbeknownst to Dr. Hotze, the DA's Office was conspiring with Mr. Brazil and Dicky Grigg to use the Civil Suit as a vehicle to gather information and investigate, to obtain the First Indictment.

39.    The DA's office benefitted from Dr. Hotze not asserting his Fifth Amendment rights in the Civil Suit, because Dr. Hotze was not informed and was unaware that he was the target of a criminal investigation.

40.    Because he had not been indicted, Dr. Hotze participated in the Civil Suit discovery process and did not request a stay of the Civil Suit or assert his Fifth Amendment rights.  Asserting his Fifth Amendment rights in the Civil Suit would have resulted in a "adverse inference" in favor of Mr. Lopez.

41.    Notably, the First Indictment occurred a few days after Dr. Hotze held an election integrity gala with over 500 participants featuring prominent conservative leaders from across the country, including Texas Attorney General Ken Paxton and Mike Lindell.

42.    Even though Dr. Hotze was not at the scene of the automobile accident and had no connection with it other than his role as an officer of Liberty Center for which Mr. Aguirre worked as an independent contractor, the First Indictment charged Dr. Hotze with Unlawful Restraint and Aggravated Assault with a Deadly Weapon. This is the same charge that Defendant Ogg and the DA's Office made against Mr. Aguirre.

43.    On July 11, 2024, Dr. Hotze filed a Motion to Dismiss for Prosecutorial Misconduct ("Misconduct Motion") in the First Indictment.  The Misconduct Motion argued that the DA's Office conspired with Civil Suit private attorneys to violate Dr. Hotze's Fifth Amendment and other rights.

44.    Sometime after March 5, 2024, Defendant Ogg went outside the DA's Office and entered into an informal agreement with her friend and political ally, Warren Diepraam, to take over the prosecution of Dr. Hotze's and Mr. Taylor's cases. With respect to all other cases Mr. Diepraam was handling for the DA's office, a formal contract was entered into identifying the parties, identifying the case, and amount paid.

45.    On August 19, 2024, almost four (4) years after the automobile accident, which formed the basis of the Civil Suit, and approximately one month after filing the Misconduct Motion, Defendant Ogg and the DA's Office, working through attorney, Warren Diepraam, issued a second indictment, premised on the same facts as the First Indictment against Dr. Hotze.  The second indictment included charges for engaging in Organized Criminal Activity and Aggravated Robbery with a Deadly Weapon ("Second Indictment").

46.    The Second Indictment occurred over two years after the First Indictment and after Defendant Ogg had assigned four different assistant district attorneys to the criminal case and retained contract attorney, Warren Diepraam.

47.    On September 5, 2024, Dr. Hotze was summoned to appear in Harris County District Court for the Second Indictment.  At this hearing, Dr. Hotze was arrested and jailed for ten (10) hours.

48.    On September 24, 2024, bond conditions were issued related to the Second Indictment, which required Dr. Hotze to have no contact with Mr. Lopez.  The court ordered bond conditions which further prohibited Dr. Hotze from having any contact with the DA's Office's witnesses and prevented Dr. Hotze from even trying the Civil Case without violating his court ordered bond conditions ("Bond Conditions").

49.     On October 5, 2024, the court denied Dr. Hotze's Second Amended Motion to Stay and/or Abate Proceeding.

50.     Dr. Hotze initiated a civil action on December 31, 2024 ("December 2024 Suit").  Within eighteen hours after receiving notice of this lawsuit, on New Year's Day (a government holiday), contract attorney Warren Diepraam filed a "Notice of Intent to Seek Affirmative Findings of a Deadly Weapon and Hate Crime ("Notice of Hate Crime").

51.     On January 17, 2025, the Supreme Court of Texas issued a Stay in the Civil Suit, which was set to go to trial on February 17, 2025.

52.     On May 20, 2025, DA Teare announced that his office was dismissing all four felony indictments against Dr. Hotze.  DA Teare stated that the dismissed indictments did not stand up to "legal scrutiny" and "…unlike the previous administration, [DA Teare] believes that ethical prosecutors…" should not rely upon "political theatre, media spectacle, or the reckless pursuit of headlines."

53.     DA Teare went on to say: "As we review more cases filed under the previous administration, a pattern has become quite clear: The former district attorney abused the authority of this office to overcharge and investigate those she disagreed with and outsourced high-profile criminal investigations to friends who shared her political views."  DA Teare reminded the people of Harris County that "that's not justice."

54.     Soon after taking office, DA Teare fired contract attorney Warren Diepraam.

### Aubrey Taylor

55.     Mr. Taylor is an African American journalist who publishes the Houston Business Connections Newspaper, which is a non-partisan politically focused news source.

56.     For many years, Mr. Taylor has investigated and reported on an alleged Official Misconduct ("Official Misconduct") regarding absentee ballot harvesting for certain Harris County elections, elections which have both local and national implication.

57.     Mr. Taylor has alleged that Defendant Womack is the mastermind of the Official Misconduct which operates out of Defendant Womack's property located at 4412 Almeda Road in Houston, Texas ("Almeda Location").  The Almeda Location has also served as a satellite office for the late United States Congresswoman Sheila Jackson Lee ("former Congresswoman Lee"), and Defendant Womack has served as her campaign manager.

58.     As part of the Official Misconduct, Defendant Womack hires and deploys absentee ballot harvesters to secure illegally harvested absentee mail in ballots for the benefit of Mrs. Lee and other local Democratic politicians such as Defendant Ogg.

59.     Defendant King has been a personal friend of Defendant Ogg, and both women have close political ties with each other.  Defendant King handled the operations at the DA's Office and was Defendant Ogg's second in command, along with Chief District Attorney David Mitcham.

60.     Prior to October 23, 2023, Mr. Taylor had published numerous articles in his newspaper regarding the Official Misconduct and had even filed incident reports with the Attorney General's Office for voter harvesting against Defendant Womack.

61.     Mr. Taylor has written numerous articles critical of former Congresswomen Lee, Vivian King, and Gerald Womack.

62.    Defendant King is a personal friend of and has both political and business ties to Defendant Womack.  Defendant Womack leases a property for Defendant King and has been a long-term financial donor to Defendant King's political campaigns.

63.    Defendant Ogg is a personal friend of Defendant Womack and has political ties to Defendant Womack.  Upon information and belief, Defendant Womack has financially supported Defendant Ogg's campaigns for District Attorney.

64.    Defendant King has acknowledged that for years Mr. Taylor has been highly critical of her, printing numerous articles in his newspaper which depict her in a negative light.  On October 23, 2023, Defendant King was aware of Mr. Taylor and strongly disliked him.

65.    In 2023, former Congresswoman Lee was running for Mayor of Houston, Texas and October 23, 2023, was the first day of early voting in Harris County.

66.    On October 23, 2023, Mr. Taylor was driving around Harris County visiting early voting locations to deliver vote counting devices.  Mr. Taylor became aware that when he arrived at these locations, former Congresswoman Lee's poll workers were getting on their phones to report his arrival.

67.    Around 10 a.m., Mr. Taylor arrived at the Almeda Location.  The purpose of Mr. Taylor's trip to the Almeda Location was to deliver his newspaper to an office in the building.

68.    However, after entering the building, Defendant Womack immediately charged at Mr. Taylor and swung an iron statue at his head several times.  While trying to defend himself from being struck by the statue, Mr. Taylor's hand was fractured.

69.     Mr. Taylor retreated from the Almeda Location and was unable to deliver the newspaper.

70.     Defendants Womack and King are so closely connected that when the altercation occurred at the Almeda Location, and even prior to seeking alleged medical attention, Defendant Womack immediately called Defendant King.

71.     Indeed, Defendant King was first informed about the altercation by Defendant Womack who felt comfortable enough to call to the Chief of Staff (Defendant King) for the Harris County District Attorney's office.

72.     It was at or around this time that Defendants Ogg, King and Womack concocted a scheme to have a political opponent and voice of the press unlawfully arrested and jailed for a crime which he did not commit.  As part of their scheme, Defendants Ogg, Womack and King decided to use the altercation to boost former Congresswoman Lee's poor polling[3] and to garner sympathy for the former Congresswoman who, just a few days prior, had been recorded crudely cussing out her staffer.  Defendants Womack and King, along with former Congresswoman Lee, proclaimed that a "right-wing blogger" had stormed into her campaign office and attacked her campaign manager, which depicted Defendant Womack as the victim and Mr. Taylor as the aggressor.

73.     In pursuit of their conspiratorial plans, Defendants Ogg, Womack and King decided that Defendant Womack would plead the "Fifth" to investigators, destroy and/or misplace video evidence of the altercation as well as a metal object which Defendant

---

[3] On October 21, 2023, an audio recording was released to the public which depicted Congresswoman Lee berating a staffer.  Mr. Taylor had extensively covered the leaked audio in his newspaper. https://www.currentrevolt.com/p/leaked-audio-congresswoman-shelia (visited July 12, 2025).

Womack used to repeatedly swing at Mr. Taylor, and Defendant King would use her high position within the Harris County District Attorney's Office to make sure that the DA's Office handled the investigation, which would overlook exculpatory evidence.

74.    Defendant Ogg, who personally knows Defendant Womack, ratified these plans on a phone call with Defendant King and Chief Mitcham.

75.    After ending the call with Defendant Womack, Defendant King requested that her law enforcement liaison and ex-Houston Police Department Chief C.O. "Brad" Bradford come into her office and requested that C.O. Bradford "look into it."

76.    On or about October 24, 2023, in a phone conversation with Harris County Chief District Attorney Michael Abner ("Chief Abner"), Detective Alicia Don ("Detective Don") stated that the alleged "victim" Defendant Womack was not "credible."  It was at this time, that both Chief Abner and Detective Don decided not to charge Mr. Taylor with a crime.

77.    Immediately after making this decision, Chief Abner emailed approximately 20 higher-ups within the DA's office regarding the decision not to prosecute this "noteworthy" case.

78.    Within an hour of sending this email, Defendant King called Chief Abner and stated that she disagreed with the decision not to charge Mr. Taylor with assault. Defendant King told Chief Abner to investigate the matter further.

79.    Defendant King claimed that Chief Mitcham was also upset that Chief Abner had declined to pursue charges against Mr. Taylor, as Chief Micham personally knew Defendant Womack and was involved in the same political circles as Defendant Womack.

80.     On October 25, 2023, Defendant Womack emailed Defendant King and attached three links from Mr. Taylor's newspaper which Mr. Taylor had written over the prior four days, or from October 21-25, 2023.  The newspaper links included articles about: (1) former Congresswoman Lee's election fraud and ballot harvesting (Official Misconduct); (2) Defendant Womack; and (3) operation stop former Congresswoman Lee from winning the Houston Mayoral race.  Defendant King promptly forwarded the email to Chief Abner and Chief Kieth.

81.     Defendant King stated that Mr. Taylor's news articles, which directly implicated Mr. Taylor's freedom of speech and press, had evidentiary value for their investigation.

82.     On October 25, 2023, Chief Abner called Detective Don back and stated that he had reversed his opinion and determined that the facts met the elements for the crime of assault.  Detective Don stated she did not agree and refused to file the assault charges.

83.     On October 26, 2025, a meeting was called between Detective Don, Chief Abner, Houston Police Sergeant Ferraro, Houston Police Sergeant Avila and Harris County Chief district attorney Jennifer Keith.  Both Chief Abner and Chief Keith requested that Detective Don reopen the case and complete an in-depth investigation.

84.     It was revealed at this meeting that Defendant King was pushing that the case against Mr. Taylor be prosecuted.   There were discussions that former Congresswoman Lee called Defendant King and demanded charges be filed against Mr. Taylor in exchange for a political endorsement from former Congresswoman Lee when Defendant King next ran for a public office.

85.     When Detective Don requested a subpoena for the video recording equipment as well as a search warrant from the DA's office, she was told to wait.  It was clear that the DA's office was stalling her investigation.

86.     On or about October 31, 2023, Chief Abner and Detective Don emailed regarding what was needed for HPD to complete an investigation. As part of this list, a subpoena and search warrant for the iron statue were listed.

87.     On November 1, 2023, without granting Detective Don's requests for subpoenas and search warrants, Chief Keith ordered Chief Abner to remove the case from HPD and Detective Don's control and transferred to the DA's Office.

88.     Chief Abner requested that Detective Don create a DIMS (Digital Evidence Management Systems) log number.  Chief Abner further requested that Detective Don state that the reason the case would be transferred was that the "matter was being referred to the district attorney's office for an investigation."

89.     Chief Abner was aware that Defendant King knew Defendant Womack and former Congresswoman Lee.

90.     Even though the DA's office was aware that subpoenas and search warrants were needed to procure the video evidence in the case as well as the metal object, the DA's office began their investigation and never issued the subpoenas and search warrants.

91.     As part of the DA's Office investigation, and even though Detective Don told Chief Abner that Defendant Womack was not credible, Chief Abner did not include this material evidence in the case file pursuant to obligations under *Brady v. Maryland*. The unlawful and unconstitutional investigatory practices of political opponents at the

DA's Office were for the purpose of retaliating against Mr. Taylor for the exercise of his constitutional rights.

92.     Like Dr. Hotze's case, Warren Diepraam was tasked with the prosecution of Aubrey Taylor.

**COUNT I**
**Municipal Liability**
**Pursuant to 42 U.S.C. § 1983**
**Defendant Harris County, Texas**

93.     Plaintiffs incorporate herein all statements and allegations contained in this Complaint.

94.     Defendant Ogg was the policymaker for the Harris County District Attorney's Office, which is a government agency and subdivision of Harris County, Texas.

95.     In a managerial/administrative capacity Defendant Ogg promulgated an unofficial policy, which was widespread amongst the DA's office leadership, including Defendant King, and became so common and well-settled as to constitute a custom. The unofficial policy was to weaponize the DA's Office to target Defendant Ogg's (and Defendant King's) political opponents through unlawful investigations and investigatory practices.

96.     In fact, DA Teare confirmed and condemned this practice on May 20, 2025.

97.     Alternatively, Defendant Ogg engaged in a single act when she weaponized the DA's Office and directed that political opponents, including Dr. Hotze and Mr. Taylor, be targeted and silenced through unlawful and unconstitutional investigations and investigatory practices.

98.     As part of the targeting, Defendant Ogg went outside the DA's Office and informally retained attorney Warren Diepraam to prosecute Dr. Hotze and Mr. Taylor.

99.     Defendant Ogg and the DA's Office leadership targeted Dr. Hotze because he had vocally opposed gay marriage and gay rights.  Dr. Hotze financially backed candidates for office who had similar views regarding gay marriage and gay rights.  Dr. Hotze was also an outspoken critic of perceived election fraud, which he accused Defendant Ogg of directly allowing.

100.     Defendant Ogg retaliated by pursuing an unlawful and unconstitutional investigation of Dr. Hotze which deprived him of his Fifth Amendment Rights.  The purpose of the Civil Suit was to unlawfully allow Defendant Ogg to access discovery to which she would never have had access in a criminal proceeding.

101.     Defendant Ogg's policy directed that the fruits of this unlawful and unconstitutional Civil Suit investigation be used at the hearing on September 5, 2024, or the Second Indictment, which concluded with Dr. Hotze being arrested and jailed for 10 hours.

102.     Defendant Ogg and the DA's office leadership targeted Mr. Taylor because he had written numerous articles about the Official Misconduct implicating both Defendant Ogg and Defendant King in the Official Misconduct and alleging that both benefitted from fraudulent voting schemes.  Prior to the altercation with Defendant Womack, Mr. Taylor had been particularly focused on mail-in ballot election fraud as election season was ramping up.

103.     Defendant Ogg, as a policymaker, ratified Defendant King's decision to conspire with Defendant Womack and former Congresswoman Lee to have the DA's Office remove the investigation from the Houston Police Department and transfer the investigation to the DA's Office, where the DA's Office refused to acknowledge

exculpatory evidence such as Defendant Womack's lack of credibility. The transfer of the investigation to the DA's Office was for the purpose of allowing Defendant Womack to destroy evidence and/or remove evidence and violate Plaintiff Taylor's constitutional rights.

104.    Defendant King had political, financial and personal ties to Defendant Womack, yet, in spite of the blatant conflict of interest, Defendant Ogg ratified Defendant King's decision to oversee the investigation into Mr. Taylor.

105.    Defendant Ogg and Defendant King were not acting within the scope of their constitutionally granted duties when they directed the DA's Office to target their political opponents through unlawful investigations. Nor are Defendant Ogg and Defendant King immune for their actions. Indeed "[w]hen a prosecutor performs the investigative functions normally performed by a detective of police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other."[4]

106.    Defendant Ogg's and Defendant King's conduct did not occur in the exercise of their advocatory function. Instead, their actions were investigatory where they were either gathering evidence or refusing to document *Brady* evidence as part of their investigation. As alleged herein, Defendants Ogg and King acted far outside of the proper role of a prosecutor when they are an advocate in connection with a judicial proceeding.

107.    Defendant Ogg had no jurisdiction to conspire with the Civil Attorneys to file a lawsuit against Dr. Hotze, wherein Defendant Ogg gained access to civil discovery which she would otherwise not have had access to, violating Dr. Hotze's constitutional

---

[4] *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).

rights and using the tainted discovery to have Dr. Hotze indicted on September 5, 2024. State law did not empower Defendant Ogg to bring the Second Indictment against Dr. Hotze.

108.    Defendant Ogg and Defendant King had no jurisdiction to conspire with former Congresswoman Lee and Defendant Womack to use unlawful and unconstitutional investigatory practices to deliberately and intentionally leave exculpatory evidence out of their investigation of Plaintiff Taylor, when Defendant King and Defendant Ogg had political and/or business ties with Defendant Womack.  State law did not empower Defendant King and Defendant Ogg to retaliate against Mr. Taylor's constitutional rights.

109.    As part of Defendant Ogg's unofficial targeting policy, tainted evidence, which was unconstitutionally and unlawfully obtained and/or disregarded through unlawful investigatory practices, was funneled and laundered through grand juries and court hearings to indict her political opponents and silence them.

110.    On May 20, 2025, DA Teare admitted that as his office is reviewing cases from the previous administration (Defendant Ogg), a pattern became quite clear: "The former district attorney abused the authority of this office to overcharge and investigate those that she disagreed with and outsourced high-profile criminal investigations to friends who shared her political views."

111.    Defendant Harris County, Texas, is liable for its failure to supervise Defendant Ogg and her unlawful and unconstitutional pattern of targeting her political opponents.  Because Defendant Harris County, Texas, failed to properly supervise Defendant Ogg's management and administrative "policy" to target her political

opponents, Plaintiffs' constitutional rights were violated. This failure to supervise constituted deliberate indifference to Plaintiffs' constitutional rights.

112. Neither the Texas Constitution nor the Texas Legislature supports the actions taken by Defendant Ogg and Defendant King, where political opponents were targeted for unlawful and unconstitutional investigations because of their speech.

113. As a direct and proximate consequence of the Defendant Harris County, Texas's violation of Plaintiffs' constitutional rights, Plaintiffs have suffered and will continue to suffer economic damages from defending frivolous and unconstitutional criminal matters, damage to their professional life and future career opportunities, future pecuniary losses, emotional pain, inconvenience, mental anguish, loss of enjoyment of life, and non-pecuniary damages.

**COUNT II**
**Retaliation – First Amendment**
**Pursuant to 42 U.S.C. § 1983**
**Defendants Ogg and King**

114. Plaintiffs incorporate herein all statements and allegations contained in this Complaint.

115. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State…subjects, or causes to be subjected, any citizen of the United States…to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law…"[5]

116. This country enjoys a "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open and that it may well

---

[5] *See* 42 U.S.C. § 1983.

include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials."[6]

117.    "[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions" for engaging in protected speech.[7]

118.    Plaintiffs have injuries to their First Amendment rights of freedom of speech and press, for which the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."[8]

119.    In publishing his conservative views on issues such as marriage, politics, election integrity, etc., and hosting a conservative talk radio show, as well as donating to conservative political campaigns which align with Dr. Hotze's values, Dr. Hotze was engaging and continues to engage in the constitutionally protected activities of free speech.

120.    In publishing his views and supporting certain candidates in his newspaper on issues such as the Official Misconduct, politics and election integrity, Mr. Taylor was engaging in and continues to engage in the constitutionally protected activities of free speech and freedom of the press.

121.    At the time of the events described herein, Defendant Ogg and Defendant King were state actors.

122.    In taking the above-described actions, Defendant Ogg and Defendant King were motivated to punish and intimidate Plaintiffs.  Defendants engaged in multiple harmful acts against Plaintiffs in violation of clearly established First Amendment law.

---

[6] *New York Times Co. v. Sullivan*, 376 U.S. 254, 269-70 (1964).
[7] *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)).
[8] *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

123.    In taking the actions described *supra*, Defendant Ogg and Defendant King intentionally, knowingly, willfully, wantonly, maliciously, and with reckless disregard retaliated against the Plaintiff for his constitutionally protected speech under the First Amendment, as incorporated and made applicable to the States by the Fourteenth Amendment, and Defendants' ongoing retaliation has a chilling effect on Plaintiffs' current and future speech.

124.    Specifically, Defendant Ogg retaliated against Dr. Hotze through Defendants Ogg's and King's policy to target political opponents through unlawful and unconstitutional investigations that were strategically designed to violate political opponents' (such as Dr. Hotze's) Fifth Amendment rights, and the fruits of which were used to have Dr. Hotze arrested and jailed.  These Defendants engaged in their actions to punish, intimidate and silence Dr. Hotze.

125.    Specifically, Defendants Ogg and King retaliated against Mr. Taylor when Defendants King and Ogg targeted Mr. Taylor through unlawful and unconstitutional investigations, because of his political opposition and statements regarding the Official Misconduct.  Defendants Ogg and King conspired with Defendant Womack (a personal friend whom both had political and business ties to) to take over the investigation so that Defendant Womack could destroy evidence and/or make evidence unavailable.  Despite the conflict of interest, during the DA's Office investigation, Defendants Ogg and King required that Chief Abner reverse his decision and indict Mr. Taylor, falsify a government document regarding the DIMS sheet, and disregard *Brady* evidence which proved that Mr. Womack was not a credible witness or victim.

126.    Mr. Hotze's exercise of his constitutional rights to freedom of speech played a substantial part in the Defendant Ogg's decisions to collaborate with the Civil Suit attorneys and those who may be funding these attorneys, to initiate the Civil Suit and to use the Civil Suit as a pretext for acquiring discovery which would otherwise not be available without a court order in a criminal proceeding.

127.    Defendant Ogg retaliated against Dr. Hotze and Mr. Taylor by going outside the DA's Office and hiring contract attorney Warren Diepraam to further target Plaintiffs due to their political beliefs and expression thereof.

128.    Defendant Ogg's and Defendant King's actions deprived Plaintiffs, and continue to deprive Plaintiffs, of their rights to free speech and press, and caused Plaintiffs to suffer injuries that chill them from continuing to engage in constitutionally protected activity.

129.    It is clearly established that retaliating against your political opponents by intimidating and punishing them with unlawful and unconstitutional investigations because of their speech is a violation of the First Amendment.  Every reasonable government official would have had a fair warning that doing so and participating in a scheme to do so is unconstitutional.

130.    Defendants Ogg's and King's conduct violated clearly established rights belonging to Plaintiffs of which reasonable persons in Defendants' position knew or should have known.

131.    Defendants' acts were done under color of state law.

132.    Defendants' actions as alleged herein have been taken in bad faith to harass and retaliate against Plaintiffs.  Plaintiffs have suffered specific and substantial injuries in

fact to a legally protected interest; such injuries are a direct and proximate consequence of Defendants' violation of Plaintiffs' constitutional rights.

133.    As a direct and proximate consequence of the Defendants' violation of the First Amendment, Plaintiffs have suffered and will continue to suffer economic damage from the defense of frivolous and unconstitutional criminal matters, damage to Plaintiffs' professional life and future career opportunities, future pecuniary losses, emotional pain, inconvenience, mental anguish, loss of enjoyment of life, and non-pecuniary damages.

**COUNT III**
**Violation of the Fifth Amendment Through the Fourteenth Amendment**
**Right to Remain Silent**
**Pursuant to 42 U.S.C. § 1983**
**Defendant Ogg**

134.    Plaintiffs incorporate herein all statements and allegations contained in this Complaint.

135.    Defendant Ogg collaborated with the Civil Suit attorneys.

136.    Defendant Ogg directed that Civil Suit be brought for the pretext purpose of acquiring information and investigating Dr. Hotze.

137.    Defendant Ogg infringed on Dr. Hotze's rights by using the Civil Suit to bypass the protections guaranteed to Dr. Hotze by the Fifth Amendment through the Fourteenth Amendment of the U.S. Constitution.

138.    By concealing from Dr. Hotze that he was the target of a criminal investigation, Defendant Ogg compelled and/or deceived Dr. Hotze to undergo discovery in the civil matter when he could have asserted his Fifth Amendment rights.

139.    Defendant Ogg used the unlawful and unconstitutional investigation for the September 5, 2024, Second Indictment, where Dr. Hotze was summoned to appear in

Harris County District Court for the Second Indictment.  At this hearing, Dr. Hotze was arrested and jailed for 10 hours.

140.    Through the Civil Suit and the Second Indictment, Defendant Ogg forced Dr. Hotze to either waive his Fifth/Fourteenth Amendment right to remain silent or suffer adverse consequences and possibly an adverse judgment by invoking his Fifth/Fourteenth Amendment right.

141.    Defendant Ogg placed an unconstitutional burden on Dr. Hotze's exercise of his Fifth/Fourteenth Amendment rights.

142.    Defendant Ogg's actions were done under the color of state law.

143.    Defendant Ogg was not acting within the scope of her constitutionally granted duties when she directed the DA's Office to target her political opponents through unlawful and unconstitutional investigations.  Defendant Ogg is not immune for her actions.  Indeed "[w]hen a prosecutor performs the investigative functions normally performed by a detective of police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other."[9]

144.    As a direct and proximate consequence of the Defendant Ogg's investigatory actions, Defendant Ogg has deprived Dr. Hotze of his Fifth/Fourteenth Amendment rights, and Dr. Hotze has suffered and will continue to suffer economic damages from the defense of frivolous and unconstitutional criminal matters, damage to his professional life, future pecuniary losses, emotional pain, inconvenience, mental anguish, loss of enjoyment of life, and non-pecuniary damages.

---

[9] *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).

145.    As a result of Defendant Ogg's actions, Defendant Ogg has deprived Dr. Hotze of his Fifth/Fourteenth Amendment rights and thereby has damaged and injured Dr. Hotze.

**COUNT IV**
**Assault and Battery**
**Defendant Womack**

146.    Plaintiff incorporates herein all statements and allegations contained in this Complaint.

147.    On October 23, 2023, Mr. Taylor was attacked by Defendant Womack at the Almeda Location.

148.    Mr. Taylor entered the Almeda Location for the purpose of delivering his newspaper to an office in the building.  However, Defendant Womack immediately picked up an iron statue and charged at Mr. Taylor.

149.    As Defendant Womack came closer to Mr. Taylor he began swinging the iron statue at Mr. Taylor's head.  While trying to defend himself from being struck by the statue, Mr. Taylor's hand was seriously injured.

150.    Mr. Taylor suffered from serious injuries, including a fractured hand.

151.    Defendant Womack intentionally, knowingly, or recklessly caused injury to Mr. Taylor.[10] Defendant Womack's actions were willful and malicious in interfering with and retaliating against Mr. Taylor's exercise of his constitutional rights.

152.    As a direct and proximate consequence of Defendant Womack's attack on

---

[10] *Jones v. Shipley*, 508 S.W.3d 766, 769 (Tex. App. 2016)(citing *Loaisiga v. Cerda*, 379 S.W.3d 248, 256 (Tex. 2012).

Mr. Taylor, Mr. Taylor suffered physical injuries, emotional pain, inconvenience, mental anguish, loss of enjoyment of life, and non-pecuniary damages.

**COUNT V**
**Intentional Infliction of Emotional Distress**
**Defendant Womack**

153.     Plaintiff incorporates herein all statements and allegations contained in this Complaint.

154.     As stated *supra*, Defendant Womack acted intentionally when he picked up the iron statue and charged at Mr. Taylor, swinging the statue at Mr. Taylor's head and striking Mr. Taylor's hand.  Defendant Womack chased Mr. Taylor from the building, carrying the iron statue outside to continue his attack.

155.     Defendant Womack's conduct was malicious, extreme and outrageous.  Mr. Taylor was at the Almeda Location to deliver his newspaper to another business and was ambushed and attacked.

156.     Defendant Womack's actions caused Mr. Taylor severe emotional distress. Defendant Womack's actions were directed at Mr. Taylor and Mr. Taylor was present at the scene of the attack.

157.     As a direct and proximate consequence of Defendant Womack's attack on Mr. Taylor, Mr. Taylor suffered physical injuries, emotional pain, inconvenience, mental anguish, loss of enjoyment of life, and non-pecuniary damages.

**PRAYER FOR RELIEF**

158.     Plaintiffs seek the following relief:

a.  Award Plaintiff Dr. Hotze compensatory and punitive damages against Defendants Harris County, Texas, Ogg and King, in amounts that are fair, just and reasonable, to be determined at trial;

b.  Award Plaintiff Dr. Hotze reasonable attorneys' fees and costs against Defendants Harris County, Texas, Ogg and King under 42 U.S.C. §§ 1983 and 1988;

c.  Award Plaintiff Taylor compensatory and punitive damages against all Defendants in amounts that are fair, just and reasonable, to be determined at trial;

d.  Award Plaintiff Taylor reasonable attorneys' fees and costs against all Defendants under 42 U.S.C. §§ 1983 and 1988; and

e.  Grant such other and further relief as this Court may deem appropriate and equitable.

## DEMAND FOR A JURY TRIAL

Plaintiffs hereby demand a trial by jury on all the issues so triable.

Respectfully submitted,

**WOODFILL LAW FIRM, PC**

  _/s/ Jared Woodfill_
Jared R. Woodfill
State Bar No. 00788715
Dorothy "Beth" Chambers
SDTX Bar No. 3898811
3 Riverway, Suite 750
Houston, Texas 77056
Tel: (713) 751-3080
Fax: (713) 751-3058
woodfillservice@gmail.com (service)
jwoodfill@woodfilllaw.com (non-service)

Dated:  September 23, 2025