**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| **STEVEN F. HOTZE, M.D. AND AUBREY TAYLOR,** § § § | |
| *Plaintiffs*, § § | |
| **v.** § § § | **Case Number  4:25-CV-04492** |
| **KIM OGG, VIVIAN KING, GERALD WOMACK and HARRIS COUNTY, TEXAS, a government municipality in Texas,** § § § § § § | |
| *Defendants*. § | |

**<u>DEFENDANTS VIVIAN KING AND KIM OGG's MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... iii

NATURE AND STAGE OF THE PROCEEDINGS ...................................................... 1

STATEMENT OF ISSUES ................................................................................. 1

SUMMARY OF THE ARGUMENT ....................................................................... 2

BACKGROUND ............................................................................................ 2

LEGAL STANDARD ....................................................................................... 4

ARGUMENT ............................................................................................... 6

I.     The First Amendment retaliation claim (Count II) fails on the elements and based
on immunity. ......................................................................................... 6

     A.    Plaintiffs' allegations do not show the absence of probable cause. ....................... 6

     B.    Ms. King and Ms. Ogg are entitled to qualified immunity. ................................ 10

          1.    As shown above, Plaintiffs have not plausibly alleged a First
Amendment violation. ...................................................................... 10

          2.    The asserted right also was not clearly established. .................................. 11

               a.    No clearly established law prohibited supervisory review or
direction of an investigation. ........................................................ 11

               b.    No clearly established law prohibited considering a suspect's
public statements as potential evidence. ........................................ 12

               c.    *Villarreal* confirms the law was not clearly established in this
context. .................................................................................. 13

     C.    Ms. King and Ms. Ogg are entitled to absolute immunity for prosecutorial
functions. ......................................................................................... 13

          1.    Absolute immunity protects prosecutorial decisions intimately
associated with the judicial phase of the criminal process. ....................... 13

          2.    Supervisory review and direction of charging decisions are
protected prosecutorial functions. ..................................................... 14

          3.    Plaintiffs' allegations do not place Ms. King or Ms. Ogg in the role
of an investigator. ......................................................................... 15

        4.     Allegations of improper motive do not defeat absolute immunity. .......... 16

II.    Dr. Hotze's Fifth Amendment claim (Count III) fails. ....................................................... 16

    A.    Dr. Hotze fails to state a Fifth Amendment claim. ................................................. 16

        1.     Voluntary participation in civil discovery is not "compelled" testimony. ................................................................................................ 17

        2.     The parallel proceedings doctrine permits simultaneous civil and criminal case development. ........................................................................ 19

        3.     There is no constitutional right to notice of a criminal inquiry. ................ 19

    B.    Ms. Ogg is entitled to qualified immunity. ........................................................... 20

    C.    Ms. Ogg is entitled to absolute immunity on Count III. ....................................... 21

CONCLUSION ........................................................................................................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Walmart Stores, L.L.C.*,
  907 F.3d 170 (5th Cir. 2018) ................................................................5

*Alvarez v. City of Brownsville*,
  904 F.3d 382 (5th Cir. 2018) (en banc) .......................................................4

*Armstrong v. Ashley*,
  60 F.4th 262 (5th Cir. 2023) ................................................................9

*Ashcroft v. al-Kidd*,
  563 U.S. 731 (2011)................................................................11, 13, 21

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).........................................................................4

*Barbieri v. United States*,
  No. 16-3748, 2017 WL 4310255 (E.D. Pa. Sept. 28, 2017)................................19

*Boyd v. McNamara*,
  74 F.4th 662 (5th Cir. 2023) ...............................................................11

*Brandley v. Keeshan*,
  64 F.3d 196 (5th Cir. 1995) ................................................................14

*Buckley v. Fitzsimmons*,
  509 U.S. 259 (1993).................................................................14, 15, 21

*Chavez v. Martinez*,
  538 U.S. 760 (2003)........................................................................18

*Cousin v. Small*,
  325 F.3d 627 (5th Cir. 2003) ...............................................................14

*Crosby v. Monroe Cty.*,
  394 F.3d 1328 (11th Cir. 2004) .............................................................8

*District of Columbia v. Wesby*,
  583 U.S. 48 (2018)........................................................................11

*Doe v. Ferguson*,
  128 F.4th 727 (5th Cir. 2025) .......................................................1, 5, 10

*Fisher v. Cervantes*,
  No. 9:10-cv-110, 2011 WL 5513439 (E.D. Tex. Sept. 12, 2011)...........................20

*Hartman v. Moore*,
547 U.S. 250 (2006) .................................................................. *passim*

*Hoog-Watson v. Guadalupe Cnty., Tex.*,
591 F.3d 431 (5th Cir. 2009) ................................................................ 5

*Imbler v. Pachtman*,
424 U.S. 409 (1976) .................................................................. *passim*

*Kesterson v. Perry*,
No. 3:95-CV-2675-P, 1997 WL 326561 (N.D. Tex. June 4, 1997) ......................... 6

*Magnolia Island Plantation, L.L.C. v. Whittington*,
29 F.4th 246 (5th Cir. 2022) ........................................................... 10, 16

*Mangieri v. Clifton*,
29 F.3d 1012 (5th Cir. 1994) ................................................................ 9

*Matthews v. Green*,
No. 23-10178, 2024 WL 448352 (5th Cir. Feb. 6, 2024) .................................. 8

*Minnesota v. Murphy*,
465 U.S. 420 (1984) ................................................................ 17, 18, 21

*Nieves v. Bartlett*,
587 U.S. 391 (2019) .................................................................. *passim*

*Santander v. Salazar*,
133 F.4th 471 (5th Cir. 2025) .......................................................... 5, 11

*SEC v. First Financial Group of Texas, Inc.*,
659 F.2d 660 (5th Cir. 1981) .............................................................. 19

*Singleton v. Cannizzaro*,
956 F.3d 773 (5th Cir. 2020) ......................................................... 5, 6, 15

*United States v. Caldwell*,
820 F.2d 1395 (5th Cir. 1987) ............................................................ 20

*United States v. Gillespie*,
974 F.2d 796 (7th Cir. 1992) ............................................................. 19

*United States v. Goodwin*,
57 F.3d 815 (9th Cir. 1995) .............................................................. 19

*United States v. Kordel*,
397 U.S. 1 (1970) .................................................................. 17, 18, 19, 21

iv

*United States v. Myers*,
    123 F.3d 350 (6th Cir. 1997) ..................................................................19

*United States v. Pacheco-Ortiz*,
    889 F.2d 301 (1st Cir. 1989) ..................................................................20

*United States v. Powell*,
    835 F.2d 1095 (5th Cir. 1988) ................................................................20

*United States v. Prudden*,
    424 F.2d 1021 (5th Cir. 1970) ................................................................20

*United States v. Tweel*,
    550 F.2d 297 (5th Cir. 1977) ..................................................................20

*United States v. Washington*,
    431 U.S. 181 (1977) ................................................................................19

*United States v. White*,
    589 F.2d 1283 (5th Cir. 1979) ................................................................18

*Van de Kamp v. Goldstein*,
    555 U.S. 335 (2009)..................................................................14, 15, 21

*Villarreal v. City of Laredo*,
    134 F.4th 273 (5th Cir. 2025) (en banc) ................................7, 8, 12, 13

*Wearry v. Foster*,
    33 F.4th 260 (5th Cir. 2022) ....................................................................6

*Wooten v. Roach*,
    964 F.3d 395 (5th Cir. 2020) ..................................................................15

**Statutes**

Tex. Penal Code § 22.01(a)...........................................................................8

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)......................................................................... *passim*

U.S. Const. amend. I ............................................................................. *passim*

U.S. Const. amend. IV ..............................................................................8, 9

U.S. Const. amend. V.............................................................................. *passim*

## NATURE AND STAGE OF THE PROCEEDINGS

Defendants Kim Ogg and Vivian King move to dismiss this Section 1983 action pursuant to Fed. R. Civ. P. 12(b)(6), including based on the doctrines of qualified and absolute immunity.

Ms. Ogg is the former Harris County District Attorney ("DA"), and Ms. King was formerly Chief of Staff of the Harris County District Attorney's Office ("DA's Office"). Compl., ECF No. 1 ¶¶ 9–10. Plaintiffs, Dr. Steven Hotze and Aubrey Taylor, allege that while affiliated with the DA's Office, Ms. Ogg and Ms. King targeted them based on their viewpoints, and that criminal charges were brought against Dr. Hotze. Plaintiffs claim this violated their First Amendment rights to free speech. *Id.* ¶¶ 114–33 (Count II). Dr. Hotze also claims that Ms. Ogg violated his Fifth Amendment right against compelled self-incrimination by not informing him he was the target of a criminal investigation. *Id.* ¶¶ 134–45 (Count III). In that regard, Dr. Hotze alleges that Ms. Ogg "collaborated" with attorneys who brought civil litigation against Dr. Hotze and benefitted from civil discovery in a criminal prosecution of Dr. Hotze. *Id.* ¶ 135.

## STATEMENT OF ISSUES

This motion presents the following issues, all of which are subject to the familiar Rule 12(b)(6) standard. *E.g.*, *Doe v. Ferguson*, 128 F.4th 727, 732 (5th Cir. 2025).

1. Whether the Complaint states a claim that Ms. Ogg and Ms. King violated Plaintiffs' First Amendment rights (Count II).

2. Whether the Complaint states a claim that Ms. Ogg violated Dr. Hotze's Fifth Amendment right against compelled self-incrimination (Count III).

3. Whether qualified or absolute immunity bars the claims against Ms. Ogg and Ms. King (Counts II and III).

## SUMMARY OF THE ARGUMENT

Plaintiffs fail to state a claim for First Amendment retaliation. The Complaint does not plausibly allege the element that retaliatory animus was the but-for cause of any adverse action. Plaintiffs instead attempt to infer unconstitutional motive from disagreement with prosecutorial decisions that are presumptively lawful and independently justified.

Ms. Ogg and Ms. King are entitled to qualified immunity. Beyond the lack of a constitutional violation, no clearly established law would give notice that the conduct alleged violated the First Amendment. And because the challenged conduct falls within prosecutorial functions, Ms. Ogg and Ms. King also enjoy absolute immunity.

Dr. Hotze's Fifth Amendment claim against Ms. Ogg fails. For starters, the Complaint does not plausibly allege compelled self-incrimination. Rather, Dr. Hotze allegedly participated in discovery in a civil case, chose not to invoke his Fifth Amendment privilege to avoid an adverse inference in the civil case, and was later indicted by a grand jury. And courts reject any suggestion that Dr. Hotze was entitled to notice that he was the subject of a criminal inquiry.

Ms. Ogg is also entitled to qualified immunity on the Fifth Amendment claim. In addition to the lack of a constitutional violation, the law does not clearly establish that a prosecutor violates the Fifth Amendment by receiving information developed in civil discovery and later pursuing criminal charges. Ms. Ogg also is entitled to absolute immunity because Dr. Hotze seeks to impose liability for her prosecutorial decision-making.

## BACKGROUND

Plaintiffs drafted the Complaint to make the following allegations, which are assumed true solely for purposes of this motion.

In October 2020, non-party Mark Aguirre was involved in an automobile incident with non-party David Lopez. Compl. ¶ 23. Mr. Aguirre was an independent contractor for an

organization associated with Dr. Hotze, who was not himself involved in the incident. *Id*. ¶ 23. Mr. Aguirre resolved a traffic-related offense in municipal court. *Id*. ¶ 27.

In March 2021, Mr. Lopez filed a state-court civil lawsuit against Dr. Hotze, asserting vicarious liability for Mr. Aguirre's conduct (the "Civil Suit"). *Id*. ¶ 28. Mr. Lopez did not name Mr. Aguirre as a defendant in the Civil Suit. *Id*. ¶ 29. Mr. Lopez's counsel pursued civil discovery from Dr. Hotze, including written discovery and deposition testimony. *Id*. ¶ 31. During this period, Mr. Lopez's counsel communicated and shared information with the DA's Office. *Id*. ¶ 34. During the Civil Suit, Dr. Hotze did not receive a target letter or other notice of a criminal inquiry or potential prosecution. *Id*. ¶¶ 32, 138. Dr. Hotze participated in civil discovery and, due to a potential adverse inference, did not invoke his Fifth Amendment privilege. *Id*. ¶¶ 39–40.

In December 2021, a grand jury indicted Mr. Aguirre in connection with the October 2020 incident. *Id*. ¶ 33. In April 2022, a grand jury indicted Dr. Hotze based on the same underlying events. *Id*. ¶ 35. In prosecuting Dr. Hotze, the DA's Office used information developed in the Civil Suit's discovery. *Id*. ¶¶ 37–39.

On October 23, 2023, Plaintiff Aubrey Taylor and Defendant Gerald Womack had a physical altercation, and Mr. Taylor sustained a hand injury. *Id.* ¶ 68. Mr. Womack reported the incident as an assault. *Id.* ¶¶ 70–71. At that time, Ms. Ogg was the DA, and Ms. King was the DA Office's Chief of Staff. *Id.* ¶¶ 9–10, 20, 59.

Ms. King requested a law-enforcement liaison review the altercation. *Id.* ¶ 75. Houston Police Department Detective Alicia Don and Chief District Attorney Michael Abner initially felt criminal charges should not be filed. *Id.* ¶¶ 76–77. Ms. King asked Mr. Abner to give the matter further attention. *Id.* ¶ 78. Over the following days, Ms. King forwarded to Mr. Abner and other prosecutors links to newspaper articles that Mr. Taylor had written and stated they could have

evidentiary value. *Id.* ¶¶ 80–81. After further review, Mr. Abner found that the facts supported an assault charge, though Detective Don disagreed. *Id.* ¶ 82. On November 1, 2023, the matter was transferred from the police department to the DA's Office for continued handling, with Ms. King overseeing prosecutorial review and case disposition.[1] *Id.* ¶¶ 87, 104. The Complaint does not allege that criminal charges were ever filed against Mr. Taylor.

Ms. Ogg, Ms. King's direct supervisor, ratified Ms. King's supervisory decisions concerning the Taylor matter and its handling within the DA's Office. *Id.* ¶¶ 9–10, 74, 94, 103–04. Mr. Taylor, who had previously published articles critical of public officials including Ms. King and Ms. Ogg, contends they acted with retaliatory motives in supervising and continuing the inquiry. *Id.* ¶¶ 61–64, 102, 125.

In August 2024, a grand jury returned a second indictment against Dr. Hotze based on the same underlying conduct as the first indictment. *Id.* ¶ 45. Dr. Hotze was arrested in connection with the second indictment. *Id.* ¶ 47. A succeeding DA dismissed the charges against Dr. Hotze. *Id.* ¶¶ 52–53.

## LEGAL STANDARD

Rule 12(b)(6) requires dismissal where the plaintiff fails to plead sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible only where the pleaded facts allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. In assessing plausibility, the court accepts well-pleaded factual allegations as true but does not accept legal conclusions or "[t]hreadbare recitals of the elements of a cause of action." *Id.* Courts

---

[1] Plaintiffs intermittently invoke *Brady v. Maryland* in their factual narrative and suggest that evidence was withheld or suppressed. But they do not plead a *Brady* claim, and none could exist where there was no trial. *See Alvarez v. City of Brownsville*, 904 F.3d 382, 392 (5th Cir. 2018) (en banc).

should dismiss a claim where the facts plausibly alleged, taken as true, do not establish an element of the claim. *Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 178 (5th Cir. 2018).

"Although qualified immunity is nominally an affirmative defense, the plaintiff bears a heightened burden to negate the defense once properly raised." *Doe*, 128 F.4th at 734 (citation omitted). "To be sure, it is the plaintiff's burden to demonstrate that qualified immunity is inappropriate at the motion to dismiss stage." *Santander v. Salazar*, 133 F.4th 471, 478 (5th Cir. 2025) (brackets, internal quotation marks, and citation omitted). "A court must carefully scrutinize the complaint before subjecting public officials to the burdens of broad-reaching discovery." *Id.* (brackets, internal quotation marks, and citation omitted).

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing that (1) the official violated a [federal] statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Id.* (citation omitted). The Court has "discretion as to which of the two prongs should be analyzed first; but, often the better approach . . . is to determine first whether the plaintiff has alleged deprivation of a federal right at all." *Doe*, 128 F.4th at 734 (brackets, internal quotation marks, and citation omitted).

Absolute prosecutorial immunity is a complete bar to damages liability for conduct "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). The doctrine is analyzed under a functional approach that focuses on the nature of the conduct, not the official's motive or title. *Singleton v. Cannizzaro*, 956 F.3d 773, 780 (5th Cir. 2020). Absolute immunity is an affirmative defense, and "the defendant who pleads the defense bears the burden of proving that the conduct at issue served a prosecutorial function." *Hoog-Watson v. Guadalupe Cnty., Tex.*, 591 F.3d 431, 437 n.6 (5th Cir. 2009) (citation omitted).

At the motion-to-dismiss stage, courts accept the complaint's well-pleaded allegations as true and determine, as a matter of law, whether those allegations describe advocatory conduct protected by absolute immunity. *Wearry v. Foster*, 33 F.4th 260, 265 (5th Cir. 2022). When the complaint alleges conduct undertaken in the prosecutor's role as an advocate in initiating, pursuing, or presenting the State's case, absolute immunity applies as a matter of law. *Imbler*, 424 U.S. at 430; *Singleton*, 956 F.3d at 779–80. Conversely, conclusory or factually deficient pleadings that fail to identify non-advocatory conduct cannot defeat immunity. *Kesterson v. Perry*, No. 3:95-CV-2675-P, 1997 WL 326561, at *3 (N.D. Tex. June 4, 1997).

## ARGUMENT

### I. The First Amendment retaliation claim (Count II) fails on the elements and based on immunity.

Plaintiffs' First Amendment retaliation claim (Count II) fails for two reasons: (A) Plaintiffs do not plausibly allege the absence of probable cause, and (B) Ms. Ogg and Ms. King have immunity, whether qualified or absolute.

#### A. Plaintiffs' allegations do not show the absence of probable cause.

To plead First Amendment retaliation, Plaintiffs must plausibly allege protected speech, adverse action, and causation—*i.e.*, that the protected speech was a but-for cause of the adverse action. *Nieves v. Bartlett*, 587 U.S. 391, 398–99 (2019). As to Mr. Taylor, the Complaint does not plausibly allege any cognizable adverse action at all. It does not allege that he was arrested, charged, indicted, or prosecuted. At most, it alleges that Ms. King reviewed and continued an internal prosecutorial review of a reported assault. But the Supreme Court has recognized First Amendment retaliation claims only in the context of arrests and prosecutions, not preliminary investigative steps. *See Hartman v. Moore*, 547 U.S. 250, 256–66 (2006); *Nieves*, 587 U.S. at 398–

405. Absent an arrest, prosecution, or comparable deprivation of liberty, Mr. Taylor has not alleged an actionable adverse action, and his claim fails on that basis alone.

In any event, even where a plaintiff attempts to premise a retaliation claim on investigative or enforcement activity undertaken in contemplation of criminal charges, the Supreme Court has imposed a further requirement: the plaintiff must plausibly allege the absence of probable cause. *Id.* at 404; *Hartman v. Moore*, 547 U.S. 250, 265–66 (2006). In *Hartman*, the Court held that a retaliatory-prosecution plaintiff "must plead and show the absence of probable cause for pressing the underlying criminal charge." 547 U.S. at 257, 265–66. The reason was causation: when criminal enforcement is at issue, decision-making is discretionary and multi-causal, and retaliatory intent is easy to allege but difficult to disentangle from legitimate enforcement reasons. *Id.* at 262–66. Probable cause matters because it supplies a lawful, independent reason why the enforcement action could have occurred regardless of speech. *Id.* at 261–62, 265–66. The absence-of-probable-cause requirement is not a "defense"; it instead ensures the plaintiff proves that the defendant's actions caused the alleged injury. *Id.* at 265–66. And that element is intended to require the plaintiff to plead more than mere allegations of motive plus improper influence. *See id.* at 262–66.

*Nieves* extended the requirement to plead and prove the absence of probable cause to retaliatory-arrest claims, holding that "[t]he presence of probable cause should generally defeat a First Amendment retaliatory arrest claim." 587 U.S. at 405. The Court emphasized the same core concern it recognized in *Hartman*: enforcement decisions commonly involve mixed motives and discretionary judgments, and probable cause provides an objective anchor that prevents plaintiffs from converting routine enforcement discretion into speech-based tort litigation. *Id.* at 400–04.

A recent en banc Fifth Circuit decision, *Villarreal v. City of Laredo*, underscores this point in the journalist-criticism context. 134 F.4th 273, 275–76 (5th Cir. 2025) (en banc). There, the

plaintiff alleged retaliation for critical reporting, but the Fifth Circuit held the officers were entitled to qualified immunity where the arrest was supported by probable cause. *Id*. A plaintiff in this context "must plead and prove the absence of probable cause" to establish causation, an essential element of a First Amendment retaliation claim. *Nieves*, 587 U.S. at 400.

Probable cause depends on the facts and circumstances within the officer's knowledge that warrant a reasonable person believing that the person has committed an offense. *Matthews v. Green*, No. 23-10178, 2024 WL 448352, at *3 (5th Cir. Feb. 6, 2024) (affirming Rule 12(b)(6) dismissal based on qualified immunity where plaintiff asserted violation of Fourth Amendment rights based on allegedly malicious arrest and prosecution). "The probable cause analysis 'does not demand any showing that the belief that an offense was committed be correct or more likely true than false.'" *Id.* (quoting *Piazza v. Mayne*, 217 F.3d 239, 245–46 (5th Cir. 2000)). "Rather, it requires us to 'find a basis for an officer to believe to a "fair probability" that a violation occurred.'" *Id.* (quoting *Piazza*, 217 F.3d at 246). The standard is "entirely objective." *Id.* at *3.

Plaintiffs have not plausibly alleged a lack of probable cause to consider or pursue criminal charges. Begin with Mr. Taylor, who complains that Ms. King considered an assault charge against him without alleging any arrest or prosecution resulted. "Whether a particular set of facts gives rise to probable cause or arguable probable cause to justify an arrest for a particular crime depends, of course, on the elements of the crime." *Crosby v. Monroe Cty.*, 394 F.3d 1328, 1333 (11th Cir. 2004). Assault includes intentionally, knowingly, or recklessly causing bodily injury to another. *See* Tex. Penal Code § 22.01(a). The Complaint alleges that Mr. Taylor's "altercation" with Mr. Womack resulted in at least one physical injury and Mr. Womack reporting that Mr. Taylor committed assault. Compl. ¶¶ 68–70. An official could reasonably treat those facts as warranting

consideration of whether an assault offense occurred, which is all Mr. Taylor alleges Ms. King did. *See id.* ¶¶ 68–73.

Dr. Hotze's retaliation theory fails for the same reason. He alleges that Defendants caused him to be indicted and arrested in retaliation for his speech, but he does not plausibly allege that the grand juries lacked a factual basis to return those indictments. To the contrary, though the Complaint describes extensive civil litigation, discovery, and witness testimony preceding the indictments, it pleads no facts showing that the evidence presented to the grand juries was insufficient to establish probable cause. *See* Compl. ¶¶ 28–48. Nor does the Complaint allege that Defendant Ogg or Defendant King personally presented evidence to the grand juries or directed the charging decisions at issue. Absent plausible allegations negating probable cause or establishing Defendants' personal involvement in the charging process, Dr. Hotze's First Amendment claim fails under *Hartman* and *Nieves*.

As to both Plaintiffs, their allegations about the *wisdom* of or *motivations* for Ms. Ogg's and Ms. King's alleged actions are of no moment as to probable cause. None of these *subjective* allegations shows a lack of *objective* probable cause. *See Hartman*, 547 U.S. at 262–66. This is as true for a First Amendment retaliation claim under *Nieves* and *Hartman* as it is for Fourth Amendment false-arrest claims, which share the absence-of-probable-cause element. *See Armstrong v. Ashley*, 60 F.4th 262, 278 (5th Cir. 2023) (recognizing element) (citing *Thompson v. Clark*, 596 U.S. 36, 42–43 (2022)); *see also Mangieri v. Clifton*, 29 F.3d 1012, 1017 (5th Cir. 1994) (holding defendants' "subjective beliefs" were "irrelevant" to "objective reasonableness" and that defendants had "objectively reasonable basis for probable cause").

Moreover, *Hartman* and *Nieves* hold that intent allegations, even vivid ones, cannot establish causation in this setting because the plaintiff also has the burden to plead and prove the

absence of probable cause. *Hartman*, 547 U.S. at 262–66; *Nieves*, 587 U.S. at 403–05. Allegations like those here—plaintiffs claiming their political opponents had subjective intent to injure them and used their prosecutorial authority to act on that intent—are precisely what motivated the Court to impose the probable-cause element. *See Hartman*, 547 U.S. at 262–66. Absent this element, the courthouse door swings open to burdensome and contentious discovery whenever someone feels targeted by prosecutors whom that person perceives as having political animus. Only rigorous enforcement of the absence-of-probable-cause element will keep the focus of criminal investigation and prosecution decisions on the appropriate objective, broadly deferential standard.

The same is true of allegations about case-development choices or alleged procedural irregularities (*e.g.*, disagreements about credibility, disputes over evidence collection steps, documentation issues, or subpoena decisions). Whatever bias or poor work Plaintiffs may contend those allegations show, the absence-of-probable-cause element exists precisely to foreclose hauling prosecutors into court whenever a plaintiff perceives animus. *See id.*[2]

Because the Complaint does not plausibly allege the absence of probable cause, it fails to state a First Amendment retaliation claim and should be dismissed under Rule 12(b)(6).

**B.    Ms. King and Ms. Ogg are entitled to qualified immunity.**

**1.    As shown above, Plaintiffs have not plausibly alleged a First Amendment violation.**

As shown above, Plaintiffs do not state a First Amendment retaliation claim because their allegations do not show the absence of probable cause. Accordingly, Ms. Ogg and Ms. King are entitled to qualified immunity. *See, e.g.*, *Doe*, 128 F.4th at 736.

---

[2] Plaintiffs' gesture at Ms. Ogg's alleged ratification of Ms. King's supervisory decisions, Compl. ¶ 104, ignores that Section 1983 does not recognize vicarious or respondeat superior liability, *e.g.*, *Magnolia Island Plantation, L.L.C. v. Whittington*, 29 F.4th 246, 251 (5th Cir. 2022). At any rate, that allegation also fails to overcome the probable-cause issue.

### 2.    The asserted right also was not clearly established.

Even if the Complaint plausibly alleged a First Amendment violation, dismissal would still be required because the asserted right was not clearly established.

A right is "clearly established" only if existing precedent places the unlawfulness of the official's conduct "beyond debate," such that every reasonable official would understand that what she is doing violates the Constitution. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). "The right may not be defined at a high level of generality because the question is whether the violative nature of particular conduct is clearly established." *Santander*, 133 F.4th at 480 (internal quotation marks and citation omitted). "Thus, this inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* (internal quotation marks and citation omitted). Supreme Court and Fifth Circuit opinions can clearly establish such a right. *Boyd v. McNamara*, 74 F.4th 662, 669–71 & n.4 (5th Cir. 2023).

The question, therefore, is not whether retaliation against journalists is unconstitutional in the abstract, but whether it was clearly established in October 2023 that a supervising prosecutor violates the First Amendment by directing or continuing prosecutorial review into an alleged assault involving a journalist, where an altercation indisputably occurred and an alleged victim made an assault allegation.

Plaintiffs have the burden to show that such a right was clearly established. *Santander*, 133 F.4th at 478. Plaintiffs cannot do so, including for the reasons discussed below.

### a.    No clearly established law prohibited supervisory review or direction of an investigation.

The Complaint alleges that Ms. King reviewed a subordinate's recommendation, disagreed with the initial assessment, instructed that the matter be further investigated, and oversaw the case.

Compl. ¶¶ 78, 104. It further alleges Ms. Ogg ratified Ms. King's decisions. *Id*. ¶ 104. Those are quintessential supervisory acts.

Nothing in Supreme Court or Fifth Circuit precedent before October 2023 held that a supervising prosecutor violates the First Amendment by directing or continuing an investigation into an alleged assault involving a political critic. To the contrary, when the Fifth Circuit later confronted similar allegations involving supervisory prosecutors and journalist-related investigations, it treated the governing doctrine as unsettled and subject to competing interpretations. *See Villarreal*, 134 F.4th at 275–76. That absence of controlling authority confirms that the alleged conduct did not violate clearly established law at the time.

Accordingly, no precedent put a reasonable supervising prosecutor on notice that directing continued prosecutorial review of an alleged assault, rather than accepting a subordinate's initial assessment, violated the First Amendment.

> **b.    No clearly established law prohibited considering a suspect's public statements as potential evidence.**

The Complaint alleges that Ms. King forwarded Plaintiffs' own publicly available news articles and stated they had "evidentiary value." Compl. ¶ 80–81. Those articles were Plaintiffs' voluntary public statements. Ms. Ogg is not alleged to have played any role in this.

No clearly established law holds that a prosecutor or supervisor violates the First Amendment by considering a suspect's publicly published statements when evaluating or directing prosecutorial review. To the contrary, *Nieves* expressly recognized that protected speech can be a legitimate consideration in law enforcement decision-making. 587 U.S. at 402.

Even *Villarreal*—a case involving a journalist and alleged retaliatory enforcement—did not suggest that reviewing or considering a journalist's published work as part of an investigation

was clearly unconstitutional. The absence of any authority proscribing such conduct confirms that the law was not beyond reasonable debate.

### c. *Villarreal* confirms the law was not clearly established in this context.

The Fifth Circuit's decision in *Villarreal* confirms that the law governing First Amendment retaliation claims arising from investigations of journalists was unsettled even in 2024. *See* 134 F.4th at 275–76. The case produced multiple opinions sharply disagreeing about how *Nieves* applies to journalist-related investigations.

Ms. King's conduct occurred in October 2023, before *Villarreal* was decided. If federal appellate judges could disagree in 2024 about whether similar conduct violated clearly established law, then the law was not "beyond debate" at the time of the events alleged here. *al-Kidd*, 563 U.S. at 741.

### C. Ms. King and Ms. Ogg are entitled to absolute immunity for prosecutorial functions.

Even if the Court were to conclude that Plaintiffs stated a constitutional claim and that qualified immunity did not apply, Count II must still be dismissed because Ms. King's alleged conduct falls within the core of the prosecutorial function and is therefore protected by absolute immunity. Plaintiffs' claim against Ms. Ogg—premised on alleged ratification of that conduct—is barred for the same reason.

### 1. Absolute immunity protects prosecutorial decisions intimately associated with the judicial phase of the criminal process.

Prosecutors are absolutely immune from civil liability for conduct "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430. This immunity is categorical and applies even where the plaintiff alleges improper motive, political influence, or

bad faith. *Id.* at 427–28. The purpose of the doctrine is to prevent the chilling of prosecutorial judgment by the threat of personal liability. *Id.* at 424–29.

Whether absolute immunity applies turns on the nature of the function performed, not the official's title or alleged motive. *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993). Alleged conduct falling within the protected prosecutorial function cannot be a basis for liability. This includes actions undertaken in preparing for and pursuing a criminal prosecution—including supervisory judgments about whether and how to proceed—all of which fall within the core of the prosecutorial function. *Cousin v. Small*, 325 F.3d 627, 631–32 (5th Cir. 2003); *Brandley v. Keeshan*, 64 F.3d 196, 201 (5th Cir. 1995).

> **2.    Supervisory review and direction of charging decisions are protected prosecutorial functions.**

Absolute immunity extends not only to line prosecutors making charging decisions, but also to supervisors who review, evaluate, and direct those decisions. In *Van de Kamp v. Goldstein*, the Supreme Court held that supervisory and administrative acts that are "directly connected with the conduct of a trial" or with the prosecutorial function itself are protected by absolute immunity. 555 U.S. 335, 344 (2009).

Here, the Complaint alleges that Ms. King reviewed a subordinate's recommendation regarding whether charges against Mr. Taylor were warranted, disagreed with the initial assessment, and directed further evidentiary development and prosecutorial review in connection with a potential charging decision. Compl. ¶¶ 79, 104. That alleged conduct falls squarely within the supervisory exercise of prosecutorial discretion—evaluating whether the evidentiary record supports prosecution and whether further development is warranted before making that determination. Because Plaintiffs' claim against Ms. Ogg is premised solely on her alleged ratification of that supervisory prosecutorial conduct, the same absolute immunity analysis applies

to her as well. Nor does the Complaint allege that Ms. King or Ms. Ogg personally engaged in any police-style investigative or charging conduct directed at Dr. Hotze, as opposed to acting through line prosecutors and investigators in the ordinary course of supervision. Such supervisory review is an advocative function protected by absolute immunity because it is inseparable from the charging decision itself. *Van de Kamp*, 555 U.S. at 344.

### 3. Plaintiffs' allegations do not place Ms. King or Ms. Ogg in the role of an investigator.

Absolute immunity does not extend to prosecutors who personally perform investigative functions traditionally associated with police work. *See Buckley*, 509 U.S. at 273–74. But the Complaint does not allege that Ms. King or Ms. Ogg personally conducted witness interviews, executed searches, fabricated evidence, or otherwise stepped into the role of a line investigator.

The cases denying absolute immunity illustrate the distinction. In *Buckley*, prosecutors did not have absolute immunity where they allegedly fabricated evidence during a pre-probable-cause investigation. 509 U.S. at 274–75. In *Wooten v. Roach*, the Fifth Circuit denied absolute immunity to an assistant district attorney who personally conducted investigative acts—such as participating in field interviews and directing on-the-ground investigative activity—while preserving immunity for the supervising district attorney who exercised oversight. 964 F.3d 395, 410–11 (5th Cir. 2020). In *Singleton v. Cannizzaro*, immunity was denied where prosecutors allegedly used fake subpoenas as an investigative intimidation tactic that circumvented the judicial process. 956 F.3d 773, 782 (5th Cir. 2020).

The Complaint alleges no comparable conduct here. At most, it alleges supervisory review, evaluation of information, and direction of further case evaluation and evidentiary development in service of a potential charging decision, or ratification of those actions. That is not investigative police work; it is prosecutorial judgment.

### 4.    Allegations of improper motive do not defeat absolute immunity.

Plaintiffs allege that Ms. King's and Ms. Ogg's actions were influenced by personal relationships or political considerations. But absolute immunity does not turn on motive. *Imbler* expressly held that immunity applies even to "malicious or dishonest" conduct. 424 U.S. at 427–28. Allowing motive allegations to defeat absolute immunity would collapse the doctrine entirely, as every retaliatory-prosecution claim necessarily must allege improper intent (among other elements). *See Hartman*, 547 U.S. at 262–64 (explaining that retaliatory-prosecution claims turn on proof of retaliatory animus and that motive-based allegations are easy to assert and difficult to disprove). Because Plaintiffs' claim against Ms. Ogg is premised solely on alleged ratification of that same conduct, and because Section 1983 does not recognize vicarious or respondeat superior liability, motive allegations do not defeat absolute immunity as to her either. *See Magnolia Island Plantation*, 29 F.4th at 251.

Absolute immunity thus is an independent ground requiring Count II's dismissal.

## II.    Dr. Hotze's Fifth Amendment claim (Count III) fails.

Dr. Hotze's Fifth Amendment claim (Count III) fails because voluntary participation in civil discovery is not "compelled" testimony, parallel civil and criminal proceedings are permissible, and there is no constitutional right to notice of a criminal inquiry. Additionally, Ms. Ogg has immunity, whether qualified or absolute.

### A.    Dr. Hotze fails to state a Fifth Amendment claim.

In Count III, Dr. Hotze alleges that Ms. Ogg violated Hotze's Fifth Amendment rights by allegedly using a civil lawsuit as a "stalking horse" to obtain discovery for later use in a criminal prosecution, without notifying Dr. Hotze of any criminal investigation. Compl. ¶¶ 135–140. The claim fails as a matter of law for at least three independent reasons: (1) the Fifth Amendment requires affirmative invocation of the privilege—voluntary participation in civil discovery does

not become "compelled" testimony merely because prosecutors allegedly coordinated with civil litigants; (2) the parallel proceedings doctrine permits simultaneous civil and criminal case development; and (3) there is no constitutional right to notice of a criminal inquiry or to a target letter. Because no constitutional violation is plausibly alleged, Count III must be dismissed under Rule 12(b)(6). Ms. Ogg also is entitled to qualified and absolute immunity.

### 1.   Voluntary participation in civil discovery is not "compelled" testimony.

The Fifth Amendment protection is against *compelled* self-incrimination, and in ordinary civil and administrative proceedings the privilege is not self-executing. A witness "ordinarily must assert the privilege rather than answer if he desires not to incriminate himself." *Minnesota v. Murphy*, 465 U.S. 420, 429 (1984). Testimony is "compelled" only when the government requires answers over a valid claim of privilege or penalizes the decision to remain silent. *Id.* at 426–28. Absent such coercion, a witness who chooses to answer "even under a general compulsion to testify" makes a constitutionally voluntary choice that cannot later be recast as compulsion. *Id.* at 428.

This principle applies with full force in the context of civil discovery. In *United States v. Kordel*, the Supreme Court rejected a Fifth Amendment challenge based on a party's voluntary participation in civil interrogatories that later supplied evidence for a criminal prosecution. 397 U.S. 1 (1970). The Court held that the corporate officer who answered the interrogatories "could have invoked his Fifth Amendment privilege," and that "[h]is failure at any time to assert the constitutional privilege leaves him in no position to complain now that he was compelled to give testimony against himself." *Id.* at 7–10. The Court emphasized that overturning the convictions on that basis would effectively create a rule immunizing civil discovery from later criminal use—a result the Constitution does not require. *Id.* at 12–13.

17

Dr. Hotze's claim founders on these black-letter rules. Dr. Hotze allegedly chose to participate in civil discovery rather than assert his Fifth Amendment rights. Compl. ¶ 40. Indeed, Dr. Hotze apparently understood that invoking his right to remain silent "would have resulted in an 'adverse inference'" in the Civil Suit. *See id*. That kind of decision—made in the absence of any unconstitutional penalty imposed by the government, let alone by Ms. Ogg—is precisely the voluntary choice that *Murphy* and *Kordel* hold cannot later be recast as "compelled" testimony.

The Complaint's allegation that Ms. Ogg "compelled and/or deceived" Dr. Hotze into participating in civil discovery, Compl. ¶ 138, fundamentally misunderstands the Fifth Amendment. Voluntary participation in civil discovery does not constitute "compulsion." That invoking the Fifth Amendment has consequences also proves nothing. The right the amendment "preserves" is the "right to choose" what to do based on the "relative advantages of silence and explanation." *United States v. White*, 589 F.2d 1283, 1287 (5th Cir. 1979). So long as a person is not unconstitutionally compelled to testify, the fact that exercising the privilege may weaken a civil defense does not render the choice involuntary. The Fifth Amendment protects against compelled testimony, not potentially hard or consequential choices.

Dr. Hotze's claim also fails because he does not allege that any statements he made in the civil case were used against him in the criminal case.[3] No violation of the self-incrimination provision occurs unless allegedly compelled statements are actually used in a criminal case. *Chavez v. Martinez*, 538 U.S. 760, 766–67 (2003). Absent such use, the person is not compelled to be a "witness" against himself. *Id.* The Complaint fails to allege that any statements Dr. Hotze allegedly made in the Civil Suit were introduced against him in any criminal proceeding. That independently forecloses any Fifth Amendment claim.

---

[3] Nor could he, given his allegation that the criminal case was dismissed before trial. Compl. ¶ 52.

### 2. The parallel proceedings doctrine permits simultaneous civil and criminal case development.

Dr. Hotze's claim also fails because settled law permits parallel civil and criminal proceedings. "There is no general federal constitutional, statutory, or common law rule barring the simultaneous prosecution of separate civil and criminal actions," and such parallel proceedings are "generally unobjectionable." *SEC v. First Financial Group of Texas, Inc.*, 659 F.2d 660, 666–67 (5th Cir. 1981). Absent special circumstances showing substantial prejudice, the government is entitled to pursue civil and criminal enforcement simultaneously. Indeed, as the Supreme Court explained in *Kordel*, "[i]t would stultify enforcement of federal law to require a governmental agency . . . invariably to choose either to forgo recommendation of a criminal prosecution once it seeks civil relief, or to defer civil proceedings pending the ultimate outcome of a criminal trial." 397 U.S. at 11. The Court emphasized that prompt civil and criminal actions may be necessary to protect the public interest.

### 3. There is no constitutional right to notice of a criminal inquiry.

The Complaint stresses that Dr. Hotze "never received a target letter" and that Ms. Ogg allegedly "concealed" a criminal investigation from him. Compl. ¶¶ 32, 138. But the Constitution imposes no requirement that prosecutors notify a person that he is under suspicion. The seminal case is *United States v. Washington*, in which the Supreme Court held that even a "target of a Grand Jury investigation does not have a constitutional right to be informed of his target status." *Barbieri v. United States*, No. 16-3748, 2017 WL 4310255, at *7 (E.D. Pa. Sept. 28, 2017) (citing *United States v. Washington*, 431 U.S. 181, 189 (1977)). "In light of *Washington*'s pronouncements, [the] argument that [a person has] a constitutional right to a target letter fails." *United States v. Myers*, 123 F.3d 350, 354–55 (6th Cir. 1997). Simply put, "target warnings are not constitutionally mandated." *United States v. Gillespie*, 974 F.2d 796, 800 (7th Cir. 1992); *accord United States*

*v. Goodwin*, 57 F.3d 815, 818 (9th Cir. 1995); *United States v. Pacheco-Ortiz*, 889 F.2d 301, 307 (1st Cir. 1989).

A plaintiff's constitutional claims thus failed as a matter of law because he had "no right to a target letter or to be put on notice of a criminal investigation against him." *Fisher v. Cervantes*, No. 9:10-cv-110, 2011 WL 5513439, at *11 (E.D. Tex. Sept. 12, 2011). The "Plaintiff further [had] no due process right to have an investigation conducted in a specific manner." *Id.* (citations omitted).

So too here. The Fifth Amendment did not require prosecutors, including Ms. Ogg, to tell Dr. Hotze that he was the subject of a criminal inquiry. Sending a target letter is a discretionary prosecutorial practice, not a constitutional mandate. People are indicted every day without first receiving target letters.

The Fifth Circuit has likewise long held that government officials have no constitutional duty to warn a subject that an investigation may result in criminal charges, and that silence, nondisclosure, or parallel civil and criminal proceedings do not constitute coercion or deception absent an affirmative misrepresentation. *See United States v. Prudden*, 424 F.2d 1021, 1033 (5th Cir. 1970); *United States v. Caldwell*, 820 F.2d 1395, 1399 (5th Cir. 1987); *United States v. Powell*, 835 F.2d 1095, 1098–99 (5th Cir. 1988). The court has recognized an exception only where an agent makes a deliberate, materially false statement in response to a direct inquiry. *See United States v. Tweel*, 550 F.2d 297, 298–99 (5th Cir. 1977). Allegations that officials "coordinated" with civil counsel or failed to issue a target letter do not fall within that narrow exception. Compl. ¶¶ 135, 138. Under settled precedent, such allegations cannot state a constitutional claim.

### B.     Ms. Ogg is entitled to qualified immunity.

Dr. Hotze cannot carry his burden to overcome qualified immunity. As shown above, the Complaint does not plausibly allege a violation of the Fifth Amendment. That defect alone entitles

Ms. Ogg to qualified immunity. But even if the allegations showed a Fifth Amendment violation, dismissal would still be required because the asserted right was not clearly established.[4] Simply put, the Fifth Amendment is not violated where a party voluntarily participates in civil discovery despite potential criminal exposure and chooses not to invoke the privilege. *See Murphy*, 465 U.S. at 429; *Kordel*, 397 U.S. at 7–10. Given the longstanding acceptance of parallel civil and criminal proceedings, and the settled rule that voluntary participation in civil discovery does not constitute compelled testimony absent invocation of the privilege, a reasonable prosecutor could not have believed that the conduct alleged here violated the Fifth Amendment. *See Kordel*, 397 U.S. at 11.[5]

### C.    Ms. Ogg is entitled to absolute immunity on Count III.

Even if the Court were to conclude that the Complaint states a constitutional claim and that qualified immunity did not apply, Ms. Ogg is entitled to absolute immunity for the same reasons discussed above. This is a third independent basis for dismissal.

As explained above, absolute immunity protects prosecutorial decisions intimately associated with the judicial phase of the criminal process, including the evaluation and use of evidence and the determination whether to initiate or pursue charges. See *Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976); *Van de Kamp*, 555 U.S. at 344; *Buckley*, 509 U.S. at 269.

---

[4] As discussed regarding Count II, the inquiry is specific, not general. The question, therefore, is not whether compelled self-incrimination is unconstitutional in the abstract. It is whether, at the time of the events alleged, it was clearly established that a prosecutor violates the Fifth Amendment by allegedly coordinating with private civil litigants and later benefitting from civil discovery in which the plaintiff voluntarily participated without invoking the privilege against self-incrimination.

[5] Plaintiffs may well think that on the facts they have alleged, a new constitutional rule should be recognized. But that's precisely the point. Qualified immunity forecloses liability based on such an extension of unsettled law. *See al-Kidd*, 563 U.S. at 741.

Here, the Complaint alleges that Ms. Ogg reviewed and relied on information obtained through civil discovery in assessing potential criminal charges. It does not allege that she personally engaged in police-style investigation, fabricated evidence, or conducted coercive interrogations. Nor do allegations of improper motive defeat absolute immunity. *Imbler*, 424 U.S. at 427–28. Because the conduct alleged in Count III falls squarely within the core prosecutorial function, Ms. Ogg is entitled to absolute immunity, which independently requires dismissal with prejudice.

## CONCLUSION

Whether on the elements or based on qualified or absolute immunity, the claims against Ms. Ogg and Ms. King should be dismissed.

Respectfully submitted this 10th day of February, 2026.

BRADLEY ARANT BOULT CUMMINGS LLP

 */s/ Robert. H. Ford*

**Robert H. Ford**
Attorney-in-Charge
Texas Bar No. 24074219
Federal Bar No. 1392569
600 Travis, Suite 5600
Houston, Texas 77002
Telephone: (713) 576-0300
Facsimile: (713) 576-0301
rford@bradley.com

**COUNSEL FOR DEFENDANTS
VIVIAN KING AND KIM OGG**

## CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2026, I served the document on all counsel and/or pro se parties of record by a manner authorized by the Federal Rules of Civil Procedure.


*/s/ Robert. H. Ford*
Robert H. Ford